### MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. OLIVE HINES.

Delivered April 8, 1898.

**Practice on Appeal—Judgment Affirmed on Second Appeal, When.**

A judgment on a second appeal will be affirmed by the Court of Civil Appeals where the case was tried in accordance with the law as announced on the former appeal.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*Mott & Armstrong,* for appellant.

*Lovejoy, Sampson & Malevinsky,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was instituted on the 19th of November, 1894, in the District Court of Galveston County, by the appellee to recover damages of the appellant for the death of her husband, R. J. Hines, resulting from personal injuries sustained by him while in the service of appellant, and which injuries the petition alleged were caused by the negligence of the appellant. A trial of the cause on the 25th of October, 1895, resulted in a verdict and judgment for the plaintiff; and upon appeal to this court the cause was transferred, by order of the Supreme Court, to the Court of Appeals for the Fourth Supreme Judicial District, holding sessions in the city of San Antonio, and that court reversed the judgment of the lower court and remanded the case for another trial, and upon a second trial verdict and judgment were again rendered for the plaintiff; and from that judgment appellant again appeals to this court. The material facts of the case are substantially these: The plaintiff is the relict of R. J. Hines, who died without children or father and mother surviving him. The deceased was in the service of appellant on the 11th of April, 1894, and on that day he sustained an injury through a blow from a heavy pile, while falling from one of a train of cars, of which he was at the time the conductor, and from which injury he shortly after died. On the day of this accident, the train of cars from which the pile fell was in the yards of appellant in the city of Houston, and on the bank of a bayou, at which point they had been placed for the purpose of throwing the piles from the cars preparatory to setting them into the bayou. The deceased was

the conductor of what was known as the pile driver train; the pile driver gang, that is, those who handled the piles, loading and unloading the cars, and placing the piles under the pile driver, consisted of eight men, and of this gang one Frank McNeley was foreman; and in transporting these men and piling, the pile driver, and other implements used by them, the train of which Hines was conductor was continuously and exclusively engaged. The crew of the train consisted of the conductor, engineer, fireman, and two brakemen. Whenever the foreman wished to be transported to a given point on the lines of the appellant, he would make it known to the conductor, who would communicate with the train dispatcher, and as soon as authorized by that official to do so, he would transport the pile gang to the point indicated by the foreman, McNeley; and while the train was in transit it was exclusively under the control and direction of Hines. When the cars were placed in position for being loaded or unloaded, by the conductor and his crew, they were under the control of the foreman, McNeley; and for any damage then done to any of the cars by himself or any of his crew, he was held responsible by the appellant. Neither the conductor of the train nor any of his crew was under obligation to assist in either loading or unloading the cars; but when the piles were being placed and driven in their position, the locomotive of the train was indispensable; and it and the members of the train crew were always at hand at such times, and the pile driver to which the train was connected was pushed and pulled from place to place as the work of placing and driving the piles required. The locomotive was worked by the engineer as he was directed by signals given him either by the conductor or one of his brakemen, and these gave the proper signals as they were instructed or requested by the foreman of the pile gang, or one of his men. The foreman nor any of his men was subject to the orders of the conductor, nor was the conductor or any of his crew subject to the order of the foreman. The trainmen owed obedience to the conductor, and the men who handled the piles obeyed the foreman. While the conductor had no authority over the men of the pile gang, if he should discover one of them in the act of doing an injury to any of the cars of his train, when the cars were under the control of the foreman, he would have the right, and it would be his duty, to interfere for the preservation of the property. The piles were from forty to sixty feet in length, which necessitated the use of two cars on which to rest them; they were loaded upon flats; ties were placed crosswise the floor of the cars, and the piles were laid upon the ties; and the cars when loaded contained from three to four tiers of piles, which were held in position by upright pieces of wood on each side of the car; the lower end of each piece was fastened to the side of the flat, and these pieces on one side of the car were fastened to those on the other side, at their upper ends, by cleats. Upon the edge of the floor of the cars, beneath the piles, skids were placed, one end of the skids resting upon the ground from ten to fifteen feet from the cars, before the side pieces which held the load in place were removed; these

skids being so placed that the piles might be thrown clear of the cars and the rail track. On the morning of the accident, orders had been given by the foreman to his men to unload the cars, these having been previously placed in the place designated by the foreman, by Hines and his crew. Upon the side of one of the flats to be unloaded was a brake, and upon this side the load was to be thrown, and consequently this brake, or rather the brakestaff, had to be removed before the car was unloaded, to prevent injury to it from the falling piles. Hines was assisting one Ferguson, one of the pile gang, in removing this brake, when he was struck by a falling pile, and from the effect of which blow he died. One or two skids had been placed in position; Hines and Ferguson were on the ground unscrewing the staff at that end, while one Smith, another member of the pile gang, was on the top or side of the car pushing the wheel on the upper end of the brakestaff from the piles against which it was pressing, when the piles commenced falling. The foreman, McNeley, was on the same side of the car and in a few feet of Hines and Ferguson at the time, and testified that Hines was instructing Ferguson and seeing that he took the brakestaff off in the right manner. Whether Hines merely volunteered to assist Ferguson in removing the brake, or whether he was impelled to do so to prevent Ferguson from destroying the brake, is a matter of dispute. There is positive evidence to the effect that Ferguson was about to break with a sledge hammer the castings on the side of the car which held the brakestaff in position, when Hines went up to him and directed him to desist from striking the casting, and was instructing and assisting him in taking off the staff, when he was hit by the falling pile. This evidence consists of the testimony alone of Ferguson; and while there is much evidence tending to discredit Ferguson's statement, we conclude that the evidence was sufficient to authorize a finding by the jury, that it was to prevent injury to the brake by the wrongful act of Ferguson that induced Hines to assist in removing the brake. The evidence is to some extent conflicting as to whether or not the side pieces which held the piles upon the cars had been removed when Hines went to the assistance of Ferguson, but our conclusion is that these pieces had not been removed; and we further conclude that Hines was not guilty of negligence, and that the servants of the appellant, acting under the orders of the foreman, McNeley, were guilty of negligence, and that that negligence was the proximate cause of the injury sustained by Hines. At the time of his death Hines was 40 years of age; was healthy and strong; was of sober and temperate habits; was a man of intelligence; and was a faithful and efficient servant of the appellant; was paid a salary of $90 per month, and to this he added something by doing extra work in his office, but how much more than his salary his monthly earnings amounted to is not definitely shown. He gave to his wife on an average, monthly, $75; this sum she shared in part with him when he was at home, but he was generally away from home, and but little of this money given to his wife was expended for his benefit. Upon the evidence dis-

closed by the record we have given our conclusions of fact, but we shall refrain from discussing or expressing an opinion upon any of the assignments presented by appellants, further than to say, we are of the opinion that the case was tried in accordance with the law as determined and announced by the San Antonio court upon the former appeal; and without expressing assent or dissent to the views of that court upon the law as applicable to this case, in deference to its opinion and decision we affirm the judgment of the court below, believing that by so doing this suit will be the sooner ended and the rights of the litigants the best subserved.

*Affirmed.*

Writ of error refused.